IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BOAZ RAMON and TALI RAMON,<br><br>    Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL PERSONAL INSURANCE COMPANY,<br><br>    Defendant. | Case No.: 3:23-cv-00316<br><br>Judge Campbell<br>Magistrate Judge Holmes<br><br>JURY DEMAND<br><br>(*Removed from the Davidson Circuit Court, Case No. 23C83*) |

## FIRST AMENDED COMPLAINT

Plaintiffs, Boaz Ramon and Tali Ramon, for their First Amended Complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, against Defendant, Liberty Mutual Personal Insurance Company, respectfully allege as follows:

1. This is an action for breach of a contract of insurance insuring Plaintiffs' Residence located in Nashville, Tennessee, and bad faith, arising out of covered losses occurring at the Residence on or about February 23, 2022, May 12, 2022, and August 4, 2022.

## PARTIES, JURISDICTION, and VENUE

2. Plaintiffs Boaz Ramon and Tali Ramon (hereinafter "Plaintiffs") are citizens and residents of Davidson County, Tennessee.

3. Defendant Liberty Mutual Personal Insurance Company (hereinafter "Defendant") is an insurance company duly licensed and authorized to operate and conduct the business of insurance in the State of Tennessee and can be served

through the Tennessee Commissioner of Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243.

4. All of the events and matters alleged herein occurred in Nashville, Davidson County, Tennessee and, as such, jurisdiction and venue are proper in this Court.

## FACTUAL BACKGROUND

### A. The Property Damage and Ensuing Claims

5. Plaintiffs' Residence is located at 3445 Hampton Avenue, Nashville, Tennessee (the "Residence").

6. The water supply system in the Residence is a cross-linked polyethylene (PEX) tubing system (the "PEX water supply system").

7. On or about February 23, 2022, Plaintiffs' Residence sustained water damage because of a leak in the PEX water supply system.

8. On or about May 12, 2022, Plaintiffs' Residence again sustained water damage in a second area because of another leak in the PEX water supply system.

9. On or about August 4, 2022, Plaintiffs' Residence again sustained water damage in a third area because of yet another leak in the PEX water supply system.

10. Plaintiffs timely notified Defendant of the losses.

11. On or about July 11, 2022, July 26, 2022, September 1, 2022, September 30, 2022, and October 12, 2022, repair estimates for Plaintiffs' Residence were submitted to Defendant in connection with the claims for water damage.

2

12. The repair estimates constituted demands for payment under the Policy.

13. The Plaintiffs' repair estimates included the reasonable costs of the necessary grade materials and highly skilled craftsmanship required to restore Plaintiffs' Residence to its pre-damaged condition.

14. The Plaintiffs' repair estimates included the cost of tearing out and replacing portions of the Residence necessary to provide access to the PEX water supply system so that it could be repaired.

15. Coverage was also requested from Defendant for the reasonable costs for necessary measures to protect against further damage to the Residence, including tearing out and replacing the PEX water supply system.

16. In December, 2022, Defendant hired Donan Engineering to provide Defendant with additional information on what the correct repair method would be and to assist Defendant further in the investigation of Plaintiffs' claims.

17. On December 8, 2022, Donan Engineering conducted a study of Plaintiffs' Residence and issued a report to Defendant dated December 15, 2022.

18. Donan Engineering identified the PEX tubing at issue in Plaintiffs' Residence as NIBCO brand PEX tubing, and that all the leaks occurred in sections of tubing marked "NIBCO DURA-PEX."

19. Donan Engineering reported that NIBCO DURA-PEX tubing of the type installed in Plaintiffs' Residence suffered from an undisclosed design and/or manufacturing defect that caused it to fail prematurely.

20. Based upon its inspection, Donan Engineering determined that the "date codes on the failed tubing are between 2007 and 2009" and that the "PEX tubing has prematurely failed between 13 and 15 years of age."

21. Donan Engineering reported that based on the information available at the time, the probable cause of the failure was a manufacturer's defect.

22. Donan Engineering reported, in no uncertain terms, that "[m]ore PEX tubing will continue to fail over time."

23. Donan Engineering recommended that "all of the PEX piping be replaced throughout the [Residence], including the previously repaired sections. This will require access behind numerous walls and ceilings throughout the house."

24. On or about January 16, 2023, Plaintiffs made a final request to Defendant for payment of all damages to include all quotes and bids for repairs that had been supplied to Defendant, before Plaintiffs would be forced to take further recourse.

25. In response to Plaintiffs' January 16, 2023, demand for payment, Defendant issued its coverage position as to all three claims on or about January 25, 2023.

26. Defendant admitted that coverage is afforded "for the ensuing water damage and for the access of the leaking pipe" in each claim.

27. Defendant has denied coverage "for the replacement of the portions of the plumbing system that caused the loss, or for the replacement of or access to the

4

remaining undamaged plumbing system."

28. Defendant cited its expert, Donan Engineering, as to the probable cause of the leaks, but ignored Donan Engineering's recommendation as to the necessary repair.

**B.     The Insurance Policy**

29. At all times alleged herein, Plaintiffs' Residence was insured by a homeowner's insurance policy, policy number H3V-251-749914-40 2 4, underwritten by Defendant. Copies of the policy and current declarations page are attached hereto as **Exhibit 1**, and all terms, conditions, and provisions of same are incorporated into this Complaint by reference as if set forth fully herein (hereinafter the "Policy").

30. Plaintiffs have faithfully paid and continue to faithfully pay their premiums for the Policy.

31. The Policy is a contract between the Plaintiffs and Defendant.

32. Pursuant to *SECTION I – PROPERTY COVERAGES*, *COVERAGE A – Dwelling,* of the Policy, the Defendant covers the "dwelling on the 'residence premises' shown in the Declarations," i.e., Plaintiffs' Residence.

33. *SECTION I – PROPERTY COVERAGES*, *ADDITIONAL COVERAGES,* paragraph 2, *Reasonable Repairs,* of the Policy, provides in pertinent part that:

> In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this Policy and the damage to that property is caused by an applicable Peril Insured

5

Against.

34. Defendant's expert, Donan Engineering has reported that the PEX water supply system will continue to fail over time.

35. The continued failure over time of the PEX water supply system will cause further damage to Plaintiffs' Residence.

36. The repair recommended by Defendant's expert, Donan Engineering, is the replacement of the entire PEX water supply system.

37. The replacement of the PEX water supply system is a necessary measure to protect against further damage.

38. By its terms, the Policy requires the Defendant to pay the reasonable cost "for necessary measures taken solely to protect against further damage."

39. Defendant has failed or otherwise refused to pay the reasonable cost "for necessary measures taken solely to protect against further damage," i.e., replacement of the PEX water supply system.

40. *SECTION I – PERILS INSURED AGAINST, COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES*, of the Policy provides in pertinent part that:

> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:
>
> (2) Caused by:
>
>   e. Any of the following:
>   (1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;
(3) Smog, rust or other corrosion, mold, wet or dry rot;
(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this Policy. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

41. The water damage in the three areas at Plaintiffs' Residence are non-excluded, covered losses under the Policy.

42. By its terms the Policy requires Defendant to "cover the loss caused by the water, including the cost of tearing out and replacing any part of the building necessary to repair the system."

43. The system to be repaired is the PEX water supply system.

44. The repair recommended by Defendant's expert, Donan Engineering, is the replacement of the entire PEX water supply system.

45. Defendant has failed or otherwise refused to pay the costs of tearing out and replacing any part of a building necessary to repair the PEX water supply system.

46. On or about April 25, 2023, Defendant non-renewed the Policy, effective June 1, 2023.

7

47. This action was commenced more the sixty days after the submission of the repair estimates, demands for payment submitted on or about July 11, 2022, July 26, 2022, September 1, 2022, September 30, 2022, and October 12, 2022.

48. This action was commenced after Defendant denied coverage on January 25, 2023, in response to Plaintiffs' final demand for payment on January 16, 2023.

49. Defendant Liberty Mutual Personal Insurance Company has been properly served with process.

## COUNT I

## BREACH OF CONTRACT AND/OR BAD FAITH

50. Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1 through 49.

51. Plaintiffs' Residence is a custom-built structure that incorporates custom and ultra-custom grade materials, and highly skilled craftmanship.

52. At the time it insured Plaintiffs' Residence, at all times thereafter, Defendant was aware of the nature and condition of the Residence.

53. As a result of pandemic and economic related supply chain and labor issues, current market conditions have increased the costs associated with the quality grade materials and highly skilled craftsmanship necessary to properly repair and restore Plaintiffs' Residence to its pre-damaged condition.

54. Defendant has failed, or otherwise refused to take into account the

current market conditions and associated increase in the cost of the quality grade materials and highly skilled craftsmanship necessary to properly repair and restore Plaintiffs' Residence to its pre-damaged condition.

55. Defendant's estimates of the associated costs of the quality grade materials and highly skilled craftsmanship necessary to properly repair and restore Plaintiffs' Residence to its pre-damaged condition are below current industry standards.

56. Defendant's estimates of the associated costs of the quality grade materials and highly skilled craftsmanship necessary to properly repair and restore Plaintiffs' Residence to its pre-damaged condition do not match in quality or craftsmanship the items to be replaced.

57. Defendant's estimates of the associated costs of the quality of grade materials and highly skilled craftsmanship necessary to properly repair and restore Plaintiffs' Residence to its pre-damaged condition do not conform to a reasonably uniform appearance.

58. Defendant has intentionally, unfairly, and in bad faith refused to fairly pay at current industry pricing standards the reasonable costs of the quality grade materials and highly skilled craftsmanship necessary to properly repair and restore Plaintiffs' Residence to its pre-damaged condition.

59. By its intentional, unfair, and bad faith refusal to fairly pay at current industry pricing standards the reasonable costs of the quality grade materials and

9

highly skilled craftsmanship necessary to properly repair and restore Plaintiffs' Residence to its pre-damaged condition, Defendant improperly placed Defendant's interests above those of Plaintiffs, and breached its contract with Plaintiffs and/or acted in bad faith.

60. Defendant has intentionally, unfairly, and in bad faith refused to fairly pay the reasonable costs necessary to properly repair and restore Plaintiffs' Residence to its pre-damaged condition.

61. By its intentional, unfair, and bad faith refusal to fairly pay the reasonable costs necessary to properly repair and restore Plaintiffs' Residence to its pre-damaged condition, Defendant improperly placed Defendant's interests above those of Plaintiffs, and breached its contract with Plaintiffs and/or acted in bad faith.

62. As a direct and proximate result of Defendant's breach of contract and/or bad faith, Plaintiffs have suffered actual economic damages.

## COUNT II

## BREACH OF CONTRACT AND/OR BAD FAITH

63. Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1 through 62.

64. The Policy provides additional coverage pursuant to which the Defendant "will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage."

65. Defendant's expert, Donan Engineering has determined that more PEX

tubing will fail over time.

66. The failure of more PEX tubing will cause further damage to Plaintiffs' Residence.

67. Defendant's expert, Donan Engineering has recommended that all of the PEX tubing be replaced throughout Plaintiffs' Residence.

68. Tearing out and replacing the PEX water supply system, as recommended by Defendant's expert, Donan Engineering, is a reasonable and necessary measure to protect against further damage to Plaintiffs' Residence.

69. Defendant has intentionally, unfairly, and in bad faith refused to provide coverage for and pay the reasonable costs for necessary measures taken solely to protect against further damage.

70. Defendant's intentional, unfair, and bad faith refusal to fairly pay the reasonable costs for necessary measures taken solely to protect against further damage improperly places Defendant's interests above those of Plaintiffs and unfairly exposes Plaintiffs to further risks, including further damage to the Residence, additional claims, additional deductibles, increased premiums, cancellation, and un-insurability as high-risk homeowners.

71. Defendant's intentional, unfair, and bad faith refusal to fairly pay the reasonable costs for necessary measures taken solely to protect against further damage is a breach of its contract with Plaintiffs and/or bad faith.

72. As a direct and proximate result of Defendant's breach of contract and/or

11

Case 3:23-cv-00316   Document 9   Filed 05/01/23   Page 11 of 15 PageID #: 56

bad faith, Plaintiffs have suffered actual economic damage.

## COUNT III

### BREACH OF CONTRACT AND/OR BAD FAITH

73. Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1 through 72.

74. The Policy provides that Defendant will cover non-excluded losses caused by the water "including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance."

75. The "system" in Plaintiffs' Residence is the PEX water supply system.

76. Defendant's expert, Donan Engineering has determined that more PEX tubing will fail over time.

77. The failure of more PEX tubing will cause further damage to Plaintiffs' Residence.

78. Defendant's expert, Donan Engineering's repair recommendation is that all the PEX tubing be replaced throughout Plaintiffs' Residence.

79. Tearing out and replacing the entire PEX water supply system, is the repair recommended by Defendant's expert, Donan Engineering.

80. Defendant has intentionally, unfairly, and in bad faith refused to provide coverage for and pay for the cost of tearing out and replacing the PEX water supply system as recommended by Defendant's expert, Donan Engineering.

81. Defendant's intentional, unfair, and bad faith refusal to fairly pay for

12

the cost of tearing out and replacing the PEX water supply system improperly places Defendant's interests above those of Plaintiffs, and unfairly exposes Plaintiffs to further risks, including further damage to the Residence, additional claims, additional deductibles, increased premiums, cancellation, and un-insurability as high-risk homeowners.

82. Defendant's intentional, unfair, and bad faith refusal to fairly pay for the cost of tearing out and replacing the PEX water supply system is a breach of its contract with Plaintiffs and/or bad faith.

83. As a direct and proximate result of Defendant's breach of contract and/or bad faith, Plaintiffs have suffered actual economic damage.

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS PRAY:**

1. That service of process issue and be served upon Defendant requiring it to appear and answer within the time required by law.

2. That judgment be issued against Defendant holding it liable for damages for breach of contract and/or bad faith, in a reasonable amount to be determined by a jury, sufficient to properly repair and restore Plaintiffs' Residence to its pre-damaged condition, including the cost of tearing out and replacing the PEX water supply system, but in an amount no less than $306,571.02, plus pre-judgment interest, and all further damages available by law.

3. That judgment be issued against Defendant holding it liable for damages for breach of contract and/or bad faith, in a reasonable amount to be

13

determined by a jury, sufficient to cover the cost for necessary measures taken solely to protect against further damage, but in an amount no less than $108,190.00, plus pre-judgment interest, and all further damages available by law.

4. That the Court impose bad faith penalties upon Defendant pursuant to Tenn. Code. Ann. § 56-7-105.

5. That the Court award attorneys' fees pursuant to the terms of the contract.

6. That punitive damages be awarded for the intentional acts of Defendant.

7. That Plaintiffs be awarded all other further general relief to which they may be entitled from the Court, including all filing fees, attorneys' fees, court costs, and discretionary costs.

8. For a jury of six (6) persons to try the issues joined.

**Respectfully submitted,**

**ROCKY McELHANEY LAW FIRM, P.C.**

*/s/ Peter Suglia*
**ROCKY McELHANEY, #20205**
**PETER SUGLIA, #039642**
**475 Saundersville Road**
**Hendersonville, Tennessee 37075**
**(615) 932-8600**
**Fax: (615) 425-2501**
**rocky@rockylawfirm.com**
**petersuglia@rockylawfirm.com**
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on May 1, 2023, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants including:

  Brian C. Neal (BPR #022532)
  Kate A. Hamilton (BPR #039331)
  Burr & Forman, LLP
  222 Second Ave. South, Suite 2000
  Nashville, TN 37201
  bneal@burr.com
  khamilton@burr.com

           */s/ Peter Suglia*
           Peter Suglia
           *Attorney for Plaintiff*